UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**MISTY REED RETZ**,

Debtor.

Case No. **04-60247-7**

# MEMORANDUM OF LAW

At Butte in said District this 19th day of March, 2008.

In this Chapter 7 case the Debtor Misty Reed Retz ("Misty") filed an objection on October 23, 2007 (Docket No. 104) to Proof of Claim No. 5 filed on June 24, 2004, by Donald G. Abbey ("Abbey") for himself and on behalf of Timberland Construction, L.L.C. ("TCLLC"). After due notice a hearing on the Debtor's objection was held after due notice at Missoula on February 7, 2008. Misty appeared represented by attorney Harold V. Dye ("Dye") of Missoula, Montana. Abbey appeared and testified, represented by attorneys Edward A. Murphy of Missoula and Michael G. Black of Missoula. Debtor's Exhibits ("Ex.") 1, 2, 3, 8, and 9 were admitted into evidence without objection. At the conclusion of the parties' cases-in-chief the Court granted the parties time to file simultaneous briefs, after which the matter would be taken under advisement. The parties' briefs have been filed and reviewed by the Court, together with the record and applicable law. This matter is ready for decision. For the reasons set forth below the Debtor's objection to Abbey/TCLLC's Claim will be sustained, and Proof of Claim No. 5 will be disallowed by separate Order.

This Court has jurisdiction of this Chapter 7 case under 28 U.S.C. § 1334(a). Allowance

1

or disallowance of claims against the estate are core proceedings under 28 U.S.C. § 157(b)(2)(B). This Memorandum includes the Court's findings of fact and conclusions of law pursuant to F.R.B.P. 7052.

## FACTS[1]

Misty's former spouse Brendon Retz ("Brendon") and Abbey entered into a real estate development business arrangement whereby Brendon's corporation Timberland Construction, Inc. ("TCI") and Brendon became members of TCLLC, with Abbey owning 50%. They entered into an "operating agreement" for TCLLC dated retroactive to July 1, 2001, and signed by Brendon as TCI's president and by Abbey as governing members.

Brendon's and TCI's capital contributions into TCLLC were to include a house and real property located at 650 Woodside Lane[2], Whitefish, Montana. Abbey testified that under the operating agreement 650 Woodside was to be transferred to TCLLC, and that he did not authorize in writing the transfer of 650 Woodside out of TCLLC, or other related transactions such as exchange of debt or equity.

Without Abbey's knowledge or written consent, Brendon through TCI conveyed 650 Woodside to himself and Misty in 2002, and they moved in and did not pay TCLLC rent while

---

[1]To clarify the narrative several general background facts are included from other proceedings involving these parties, including the hearing on the Trustee's Motion to Approve Agreement Regarding Sale Proceeds (Docket No. 96), which was a contested matter which was heard on February 7, 2008, involving the same parties. Abbey and Misty both testified in that matter, and were subject to cross examination by each other's counsel. Such background facts are not disputed by the Debtor or Abbey/TCLLC in the instant contested matter, and indeed are referred to in Abbey/TCLLC's Proof of Claim No. 5 and the parties' post-hearing briefs.

[2]650 Woodside is also described as Lot 6 of Woodside Subdivision, Flathead County, Montana.

they lived there. Misty did not contribute any cash for the down payment, and she did not contribute any cash to make payments for the purchase of 650 Woodside. She asserted that she and Brendon paid off the debt and took out a new mortgage against 650 Woodside, exchanged other property for it, and serviced the debt owed on it.

Abbey began investigating fraud and defalcation by Brendon in TCLLC, and litigation commenced between Abbey and Brendon in state court beginning around August of 2003. In August of 2003, and without Abbey's knowledge or written consent, Brendon and Misty sold 650 Woodside to Brendon's brother Ryan James Retz ("Ryan") for the sum of $160,000 as part of their effort to entice Ryan to move to Whitefish to work for TCLLC. Misty admitted that the $160,000 selling price to Ryan was a "great deal" at the time the sale closed, but that they had agreed on the price and other terms much earlier when they agreed to sell 650 Woodside to Ryan, and that was why the buy-sell agreement with Ryan was backdated.

Misty Retz filed her Chapter 7 petition and Schedules on February 6, 2004, and filed her Schedules and Statements on March 1, 2004. Misty did not list an interest in 650 Woodside in her Schedule A. Misty's Statement of Financial Affairs did not include any reference to the transfer of 650 Woodside to Ryan. No amendments to Misty's Schedules and Statements have been filed.

Abbey filed Proof of Claim No. 5 in the instant case on June 22, 2004, asserting an unsecured nonpriority claim in the amount of $110,000.00, with the basis of the claim described on the claim form stated as "fraud." Claim No. 5 has a 3-line "Summary of Claim" items attached to the Proof of Claim form, describing the $110,000 claim as "Fraudulent transfer of equity in 650 Woodside Lane," with a second line stating "Receipt of benefits from fraudulent

3

conduct of Brendon Retz" in an amount "unknown at this time."  At the hearing Abbey testified that he does not know what a proof of claim is.  On cross examination Abbey was asked if he recalled how the $110,000 amount of his Proof of Claim was arrived at, and he answered that he assumes the source of the amount is the proceeds from the sale of 650 Woodside.

Ryan Retz filed his own Chapter 7 petition, in which he was represented by Misty's attorney Dye.  Abbey filed a proof of claim in Ryan's case.  Ryan filed an objection to Abbey's claim (Ex. 8), contending that Abbey lacked standing and that his claimed lacked merit.  Abbey filed a detailed response in opposition dated November 29, 2004, Ex. 9, setting forth the factual background of the transfers of 650 Woodside.  Ex. 9, at pages 3, paragraph 9, through page 5, and later at page 7 paragraph 21, alleges fraudulent transfers, breach of duties and constructive trust naming Brendon and Ryan, but omitting any mention of Misty.

Abbey filed a complaint against Misty on March 8, 2005, in Adversary Proceeding No. 05-00017, objecting to her discharge and seeking exception from discharge.  Abbey amended the complaint, and his claims for relief included a claim alleging that Misty breached her fiduciary obligations to Abbey under a constructive trust when 650 Woodside was transferred to her and Brendon instead of to TCLLC, when she encumbered the property with a lien, and when she transferred it to Ryan.  The parties reached a settlement of Adv. No. 05-17[3].

The Trustee submitted the settlement agreement of Adv. No. 05-17, Ex. 2, dated April 28, 2006, to the Court for approval.  Ex. 2 contemplates resolution of Adv. No. 05-17 and Adversary Proceeding No. 05-00019 brought by the Trustee against Misty, and also involves Misty's former

---

[3]Misty's attorney Harold V. Dye filed a motion to vacate trial setting and scheduling order on February 1, 2006, because Dye was to undergo a kidney transplant.  The motion indicated Dye believed Adv. No. 05-17 would settle.

4

mother-in-law Jo Ellen Retz ("Jo Ellen").  As part of the settlement, in return for a reconveyance of unrelated property by deed of trust and release of any lien by Jo Ellen, and approval by the Court, Abbey agreed to dismiss his pending claims against Misty in Adv. No. 05-17.  Paragraph 5 of Ex. 2 provides:

> Each party hereto hereby releases and forever discharges . . . each of the other parties hereto . . . who . . . may be in any way . . . liable to any other party hereto with respect to the Lot 186 Ironhorse, Phase III and any associated memberships. This release extends to such persons or entities in any capacity, . . ., of and from any and all actions and causes of action, costs, fees, damages, judgments, claims and demands of any kind whatsoever, both known and unknown, with respect to the Lot 186 Ironhorse, Phase III and any associated memberships.  **PROVIDED, HOWEVER**, the release granted hereby is not intended and shall not be construed as a release of any claims by either the Trustee or Abbey as to Brendon K. Retz ....

Ex. 2 follows with provisions requiring this Court's approval; Paragraph 7 stating that "[a]ll agreements and understandings between the parties hereto are embodied and expressed herein;" and Paragraph 8 providing that the agreement represents the entire agreement.

The settlement agreement, Ex. 2, was submitted to the Court for approval by Trustee's motion filed on April 28, 2006, Ex. 1 (Docket No. 64).  No objection was filed, and on May 12, 2006, the Court entered an order (Ex. 3) approving Ex. 2 and further providing "and the parties shall henceforth be bound by all of the terms of and conditions contained in the Settlement Agreements between them and dated April 28, 2006."

Misty filed a motion to dismiss Adv. No. 05-17 on October 30, 2006, pursuant to the settlement Ex. 2.  Abbey filed a joinder to the motion to dismiss and consent to dismissal of Adv. No. 05-17 with prejudice.  The Court entered an Order on November 9, 2006, dismissing Adv. No. 05-17 with prejudice.  Adv. No. 05-17 was closed on December 5, 2006.  A discharge was

5

entered in Misty's case on December 4, 2006.[4]

## DISCUSSION

**I. Contentions of the Parties.**

Misty objected to Abbey/TCLLC's Claim No. 5 on the grounds that she was released from liability under the approved settlement dismissing Adv. No. 05-17 with prejudice, and that the recovered fraudulent transfer of the proceeds of 650 Woodside are for the benefit of all creditors instead of just one. Misty argues that Abbey/TCLLC's claim is based on "fraud" and therefore is not entitled to prima facie effect, and that Abbey/TCLLC failed their ultimate burden of proving a fraud against Misty. She contends that the transfer of 650 Woodside to her and Brendon was not fraudulent but was exchanged for payoff of debt and exchange of equity.

Abbey/TCLLC contend that 650 Woodside was intended to be TCLLC's property and none of the reasons for its transfer were supported by a writing as required under TCLLC's operating agreement. Abbey/TCLLC admits that the $110,000 figure on Claim No. 5 is an estimate, and that "it is reasonably clear" that the amount of the claim should be $84,130.73 based on the settlement of Adversary Proceeding No. 05-00005 and net equity in 650 Woodside shown by subsequent events. They admit that the amount of Claim No. 5 should be reduced to the extent they receive any of the sale proceeds[5]. Abbey/TCLLC admit that the fraudulent

---

[4]The U.S. Trustee commenced an adversary proceeding, No. 07-00084, on December 3, 2007, to revoke Misty's discharge. Trial in Adv. No. 07-84 is scheduled to commence on July 8, 2008.

[5]The settlement in Adversary Proceeding No. 05-00005 is the subject to a separate contested matter in this case. The Trustee and Abbey/TCLLC support the settlement, under the terms of which Abbey/TCLLC are to receive $60,000. Abbey/TCLLC's arguments in support of that settlement include a contention that Misty's estate is entitled to none of the proceeds from 650 Woodside.

transfer "was not to the debtor, but to Ryan," and that they make no claim against Misty "as the transferor of a fraudulent transfer." Their claim is for the value 650 Woodside would have it if had been transferred to and remained in TCLLC under the operating agreement, and is against Misty as "a debtor who wrongfully took ownership of the property and used it for her own benefit, and then voluntarily transferred it to another person . . . . Liability arose when the debtor took title to property that should have gone to the LLC, and then she made matters worse by transferring it to a third party." Abbey/TCLLC argue that the release in the settlement of Adv. No. 05-17 was related to unrelated property, and that they did not agree to release or withdraw their Claim No. 5.

**II. Allowance of Claims.**

The law on objections and allowance of claims is well settled in the Ninth Circuit and this Court. This Court discussed the applicable law governing the burden of proof for allowance of claims in *In re Eiesland*, 19 Mont. B.R. 194, 208-09 (Bankr. D.Mont. 2001):

> A validly filed proof of claim constitutes *prima facie* evidence of the claim's validity and amount. F.R.B.P. 3001(f). The Ninth Circuit recently explained the general procedure for allocating burdens of proof and persuasion in determining whether a filed claim is allowable in *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000):
>
>> A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes "*prima facie* evidence of the validity and amount of the claim" pursuant to Bankruptcy Rule 3001(f). See also Fed. R. Bankr.P. 3007. The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. See Adv. Comm. Notes to Fed. R. Bankr.P. 9014.
>
>> Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere

>formal objection without more." *Wright v. Holm (In re Holm )*, 931 F.2d
>620, 623 (9th Cir.1991) (quoting 3 L. King, Collier on Bankruptcy §
>502.02, at 502-22 (15th ed.1991)); *see also Ashford v. Consolidated
>Pioneer Mort. (In re Consol. Pioneer Mort.)*, 178 B.R. 222, 226 (9th Cir.
>BAP 1995), *aff'd*, 91 F.3d 151, 1996 WL 393533 (9th Cir.1996). To
>defeat the claim, the objector must come forward with sufficient
>evidence and "show facts tending to defeat the claim by probative force
>equal to that of the allegations of the proofs of claim themselves." *In re
>Holm*, 931 F.2d at 623.
>
>* * * *
>
>"If the objector produces sufficient evidence to negate one or more of the
>sworn facts in the proof of claim, the burden reverts to the claimant to
>prove the validity of the claim by a preponderance of the evidence." *In re
>Consol. Pioneer*, 178 B.R. at 226 (quoting *In re Allegheny Int'l, Inc.*, 954
>F.2d 167, 173-74 (3d Cir.1992)). The ultimate burden of persuasion
>remains at all times upon the claimant. *See In re Holm*, 931 F.2d at 623.

*See also Knize*, 210 B.R. at 778; *Matter of Missionary Baptist Foundation of America*, 818 F.2d 1135, 1143 (5th Cir.1987); *In re Stoecker*, 143 B.R. 879, 883 (N.D.Ill.1992), *aff'd in part, vacated in part*, 5 F.3d 1022 (7th Cir.), *reh'g denied* (1993).

Thus, the Bank's Proof of Claim No. 2 is *prima facie* evidence of the validity and amount of its claim under Rule 3001(f), and the Debtor has the burden of showing sufficient evidence and to "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Lundell*, 223 F.3d at 1039 (quoting *Holm*). This Court finds that Eric, as the objecting party, has not produced sufficient evidence to cause the burden to revert to the Bank to prove the validity and amount of its claim. *Lundell*, 223 F.3d at 1039 (quoting *In re Consol. Pioneer*, 178 B.R. at 226).

The analysis under *Lundell v. Anchor Const. Specialists* was reiterated by the Ninth Circuit in *In re Los Gatos Lodge, Inc.*, 278 F.3d 890, 894 (9th Cir. 2002). Applying this analysis to the instant case, Misty's initial burden to overcome the *prima facie* effect of the validity and amount of Abbey/TCLLC's Claim No. 5 under Rule 3001(f) is lessened by the creditors' admissions in their brief that the amount is not as stated in Claim No. 5. In addition,

8

Abbey/TCLLC's admissions that Misty's liability is limited to her receipt and use of the property, and its transfer to Ryan, constitute facts tending to defeat the claim by probative force equal to that of the allegations of the proof of claim itself. *Lundell*, 223 F.3d at 1039. The *prima facie* effect of Claim No. 5 is not buttressed by any writing signed by Misty, nor by any judgment against her or court order in Abbey/TCLLC's favor based on fraud. Since Claim No. 5 included little other than an allegation of fraud, Misty's hurdle to overcome the *prima facie* effect of the claim was not high.

Abbey/TCLLC's Claim No. 5 being based on a bare assertion of fraud and admitted incorrect amount, the Court finds that Misty has satisfied her initial burden. The ultimate burden thus reverts to Abbey/TCLLC to prove the validity of their claim by a preponderance of the evidence. *Lundell*, 223 F.3d at 1039. Abbey/TCLLC must prove that they have a "right to payment," 11 U.S.C. § 101(5)(A), from Misty based on fraud.

Abbey/TCLLC did not initiate an adversary proceeding in this case to recover a judgment against Misty for fraud. The amended complaint in Adv. No. 05-17 stated claims for relief based on 11 U.S.C. § 523(a)(4) (defalcation while acting in a fiduciary capacity), failure to disclose assets and transfer and concealment of assets under 11 U.S.C. § 727(a). No claim for relief based on fraud was averred in Adv. No. 05-17, and no claim or judgment against Misty for fraud is shown by the evidence.

On the other hand, the Court rejects Misty's contention that Abbey/TCLLC's Claim No. 5 was dismissed as part of the settlement agreement between the parties resolving Adv. No. 05-17. Ex. 2 and 3 contain no such provision for withdrawal or disallowance of Abbey/TCLLC's Proof of Claim. Misty received dismissal of the complaint for denial of her discharge and exception

9

from discharge in that settlement, which was based upon the transfer of unrelated property, and she has failed to show that the settlement, Ex. 2, governed allowance of Abbey/TCLLC's claim, which is not listed among adversary proceedings at F.R.B.P. Rule 7001.

To establish a *prima facie* of actual fraud under Montana law the party asserting the claim must establish the following nine elements: (1) a representation; (2) the falsity of that representation; (3) the materiality of the representation; (4) the speaker's knowledge of the representation's falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the representation's falsity; (7) the hearer's reliance upon the truth of the representation; (8) the hearer's right to rely upon the representation; and (9) the hearer's consequent and proximate injury or damages caused by their reliance on the representation. *In re Estate of Kindsfather*, 2005 MT 51, ¶ 17, 326 Mont. 192, 197, ¶ 17, 108 P.3d 487, 490, ¶ 17. Fraud must be proven by a preponderance of the evidence, and the party asserting fraud must prove each of the nine elements. *Kindsfather*, 2005 MT 51, ¶ 18, 326 Mont. at 197, ¶ 18, 108 P.3d at 490-91, ¶ 18; *Barrett v. Holland & Hart* (1992), 256 Mont. 101, 106, 845 P.2d 714, 717.

Abbey/TCLLC have failed to satisfy their burden of proof against Misty with respect to any of the nine elements of fraud. In considering whether Abbey/TCLLC have met their burden the Court will not weigh conduct by other parties, in particular Brendon, against Misty. Misty's liability to Abbey/TCLLC for any right to payment from her based on fraud must depend on her conduct, not Brendon's.

Ex. 9 reflects Abbey's recognition in Ryan's case that the principal actors were Brendon and Ryan, because it does not include Misty as part of the scheme to deed 650 Woodside out of

TCLLC and transfer it later to Ryan. In Abbey/TCLLC's post-hearing brief they admit that the fraudulent transfer was not to Misty, they make no claim against Misty as the transferor of a fraudulent transfer. Their claim is for the value 650 Woodside would have been if it had been transferred to and remained in TCLLC under the operating agreement, and is against Misty as "a debtor who wrongfully took ownership of the property and used it for her own benefit, and then voluntarily transferred it to another person . . . . Liability arose when the debtor took title to property that should have gone to the LLC, and then she made matters worse by transferring it to a third party."

In short, even if all of their contentions were true Abbey/TCLLC would fail to satisfy the above-listed elements for liability based on fraud. Abbey/TCLLC have alleged a theory of constructive trust in other filed documents, but they do not base Claim No. 5 on constructive trust so that cannot be the basis for allowance of their claim. Misty did not transfer 650 Woodside to herself and Brendon, Brendon on behalf of TCI did. While Misty may have benefitted by living in 650 Woodside, no evidence exists in the record quantifying that benefit, and such benefit is insufficient in any event to establish the elements required for fraud. With respect to her transfer of 650 Woodside to Ryan, all the evidence offered in these proceedings shows that Misty was a minor player, and that Brendon was the driving force behind the transfers.

Finally, Abbey/TCLLC's claim cannot be based on an argument that Misty received a benefit from the sale of 650 Woodside recovered by the Trustee in settlement of fraudulent transfer claims. Abbey/TCLLC have consistently argued and offered evidence that Misty contributed no cash down payments, made no payments, and contributed no equity to the acquisition of 650 Woodside by herself and Brendon so her estate is entitled to none of the

11

proceeds. In addition the evidence admitted in other proceedings shows that the transfer of 650 Woodside to Ryan was at an extremely favorable price to Ryan, not to Misty. The Court has approved a settlement in this case from Adv. No. 05-5 which provides that Misty's estate is entitled to none of the proceeds from the sale of the recovered 650 Woodside. Thus, contrary to Abbey/TCLLC's contention, it failed its burden to show that Misty received a benefit from the transfer to Ryan upon which it bases its claim.

For the above reasons the Court concludes that Abbey/TCLLC have failed their ultimate burden to prove the validity of their claim by a preponderance of the evidence. *Lundell*, 223 F.3d at 1039. Accordingly, the Debtor's objection to Abbey/TCLLC's Claim No. 5 must be sustained and Proof of Claim No. 5 will be disallowed.

**IT IS ORDERED** a separate Order will be entered in conformity with the above sustaining the Debtor's objection to Abbey/TCLLC's Proof of Claim (Docket No. 104), and disallowing Proof of Claim No. 5 filed by Abbey/TCLLC on June 22, 2004.

        BY THE COURT

        /s/ Ralph B. Kirscher
        HON. RALPH B. KIRSCHER
        U.S. Bankruptcy Judge
        United States Bankruptcy Court
        District of Montana