UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**MISTY REED RETZ**,

Debtor.

Case No. **04-60247-7**

# MEMORANDUM OF LAW

At Butte in said District this 26th day of March, 2008.

In this Chapter 7 case creditors Donald G. Abbey ("Abbey") and Timberland Construction, LLC ("TCLLC"), filed on October 31, 2007, an objection (Docket No. 106) to Proof of Claim No. 6 filed by Jo Ellen Retz ("Jo Ellen"). After due notice a hearing on Abbey/TCLLC's objection was held after due notice at Missoula on February 7, 2008. Abbey and TCLLC were represented by attorneys Edward A. Murphy and Michael G. Black, both of Missoula, Montana, and called as witnesses the Debtor, Misty Reed Retz ("Misty") and Chapter 7 Trustee, Richard J. Samson ("Samson") to testify. Jo Ellen was represented by attorney James A. Patten of Billings, Montana. Abbey's Exhibits ("Ex.") 6, 7, 8, 28, and 34, and Jo Ellen's Ex. 2, 5, 7 and 8, all were admitted into evidence without objection. At the conclusion of the parties' cases-in-chief the Court granted the parties time to file simultaneous briefs, after which the matter would be taken under advisement. The parties' briefs have been filed and reviewed by the Court, together with the record and applicable law. This matter is ready for decision. For the reasons set forth below Abbey/TCLLC's objection to Jo Ellen's Proof of Claim will be overruled and Proof of Claim No. 6 allowed by separate Order.

1

This Court has jurisdiction of this Chapter 7 case under 28 U.S.C. § 1334(a). Allowance or disallowance of claims against the estate are core proceedings under 28 U.S.C. § 157(b)(2)(B). This Memorandum includes the Court's findings of fact and conclusions of law.

## FACTS[1]

Misty's former spouse Brendon Retz ("Brendon") and Abbey entered into a real estate development business arrangement whereby Brendon's corporation Timberland Construction, Inc. ("TCI") and Brendon became members of TCLLC, with Abbey owning 50%. They entered into an "operating agreement" for TCLLC dated retroactive to July 1, 2001, and signed by Brendon both personally and as TCI's president, and by Abbey, as governing members. Litigation between Brendon and Abbey regarding alleged violations of the operating agreement commenced in state district court in Flathead County, Montana, on or about August 2003.

Misty works as a realtor, but was not working regularly in 2003 while pregnant with their child. She testified that Brendon was not working after the litigation with Abbey commenced in August 2003, and they owed legal bills to their attorneys, Measure and Wilson, and general household bills. Misty and Brendon did not combine their finances during their marriage. She testified that she did not have check writing authority on Brendon's checking accounts.

Brendon incurred several large charges on his American Express credit card, and wanted to repay those charges. Misty and Brendon approached his parents, Robert Retz ("Robert") and

---

[1]To clarify the narrative some general background facts are included from other proceedings involving these parties, including the hearing on the Trustee's Motion to Approve Agreement Regarding Sale Proceeds (Docket No. 96), which was a contested matter which was heard on February 7, 2008, involving the same parties. Abbey and Misty both testified in that matter, and were subject to cross examination by each other's counsel. Such background facts are not disputed by the parties in the instant contested matter.

2

Jo Ellen Retz, for a loan. Misty testified that she picked up a check from Robert in the amount of $80,000 and deposited it into Brendon's account at Glacier Bank. Misty testified that she considered herself personally obligated Jo Ellen for the $80,000 loan from Jo Ellen and Robert, but she did not sign a promissory note on the date Robert wrote the $80,000 check because she had not agreed with Robert[2] about repayment terms.

Abbey's Ex. 7 is a Glacier Bank deposit slip with Brendon's name dated 10/14/03 in the total amount of $130,000.00, of which $50,000 was currency and the other $80,000 was a check dated 10/14/03, signed by Robert made out to Brendon with a memo stating "Loan for Amex." Misty testified that the language on the back of the check "Deposit Only," at page 3, is in her handwriting, and that she deposited the check and $50,000 in cash into Brendon's account. She testified that, as far as she knows[3], the $80,000 from Robert went to pay Brendon's American Express bills, legal bills for their attorneys, Measure and Wilson, and for household bills and meals.[4]

Abbey's Ex. 6 is the statement of account for Brendon's American Express account no. 3713-893663-01008 with a closing date of 10/11/03. Abbey's Ex. 6 shows four (4) $40,000 charges by Brendon to North Forty Resort in September 2003, a transfer or credit by Misty in the amount of $35,000.00, and computer payments received in the amounts of $60,370.25 and $99,904.81. Misty testified that she never saw Brendon's American Express bills.

---

[2] Misty testified that Robert was a bit of a sexist.

[3] She testified that the household bills were sent to Brendon's office.

[4] Misty recalled that check no. 2815 for $70.00 dated 10/17/03 on Abbey's Ex. 8 was for a late anniversary meal.

3

Brendon's Bank of America statement for account no. 4888 6031 7023 2250 for September/October 2003, TCLLC's Ex. 34, shows a $37,000.00 charge to North Forty Resort Corp. transacted on September 25, 2003. Samson testified that Robert and Jo Ellen were majority shareholders in North Forty Resort Corp. In September/October of 2003, Brendon and his brother Ryan each had six percent interests (6%).

Abbey's Ex. 8 is the Glacier Bank checking account statement for Brendon's account no. 4002899 dated 10/17/03 for September and October 2003. Misty did not know whether Abbey's Ex. 8 was a complete statement, but testified that it reflected large payments to American Express. Abbey's Ex. 8 shows two electronic payments dated 10/14 to American Express in the amounts of $37,036.55 and $99,904.81. Samson testified that he reviewed Abbey's Ex. 8 and concluded that $99,904.81 was paid electronically on Brendon's account.

Jo Ellen's Ex. 2 is a promissory note dated November 3, 2003, signed by Misty payable to Robert in the amount of $80,000 and payable in payments beginning on or before February 5, 2004. Misty testified that she received a benefit from the $80,000 from Robert in the form of payment of her attorney fees, household expenses and meals, and that she very much feels obligated to Robert and Jo Ellen under the note. Misty's testimony is uncontroverted.

Also on November 3, 2003, Misty signed a Montana trust indenture, Jo Ellen's Ex. 5, to secure repayment of the $80,000 note naming Robert as beneficiary, with the security described as her interest in Lot 186 of Iron Horse, Phase 4, Flathead County, Montana. Misty testified that she had an interest in that property on the date she signed Ex. 5.

Misty Retz filed her Chapter 7 petition and Schedules on February 6, 2004, and filed her Schedules and Statements (Abbey's Ex. 28) on March 1, 2004. Robert M. Retz is listed as a

4

creditor holding a secured claim in the amount of $80,000.00, of which none is stated as unsecured although the value of the security is stated as $0. The Statement of Financial Affairs lists the loan from Robert in response to question 10 as an $80,000.00 loan. Misty testified that the "10/01/2003" date of the loan is not accurate and it should have read October 14, 2003, when Robert gave her the check. No amendments to Misty's Schedules and Statements have been filed.

Samson was appointed Trustee in Misty's case. He testified that he investigated the credit card companies and issued up to twenty subpoenas to identify preferences and fraudulent transfers. Samson initiated Adversary Proceeding No. 05-00019 against Misty seeking denial of her discharge under several provisions of 11 U.S.C. § 727(a). Samson also pursued recovery against North Forty Resort Corp., and he testified that he reached settlements with both Misty and North Forty Resort Corp.

Abbey filed Proof of Claim No. 5 in the instant case on June 22, 2004, asserting an unsecured nonpriority claim in the amount of $110,000.00, based on fraud[5].

On April 28, 2006, Misty, Samson, Jo Ellen and Abbey signed a settlement agreement, Jo Ellen's Ex. 7. In Jo Ellen's Ex. 7, Jo Ellen agreed to release her trust indenture against Lot 186 of Iron Horse, Phase 4, after which Jo Ellen was allowed the time specified in F.R.B.P. 3002(c)(3) to file an unsecured claim. All parties released each other for claims with respect to Lot 186 of Iron Horse and related memberships, and Samson and Abbey agreed to dismiss Adversary Proceeding Nos. 05-00017 and 05-00019 against Misty. Misty, Samson, Jo Ellen and Abbey all signed Jo Ellen's Ex. 7, which was approved by the Court. Misty and Jo Ellen

---

[5] By separate decision Abbey's claim has been disallowed. Docket Nos. 139/140.

performed under that settlement agreement and both adversary proceedings were dismissed.

Another settlement agreement dated April 28, 2004, between Samson, Misty, Brendon, and Jo Ellen, individually and on behalf of North Forty Resort, Corp., North Forty Resort, LLC, and Robert's estate, was admitted as Jo Ellen's Ex. 8, and is a global settlement between the parties regarding the sale of Brendon's shares in the North Forty Resort Corp. Among other things, in Jo Ellen's Ex. 8, North Forty Resort Corp. agreed to pay Samson $25,500.00 for Brendon's shares and interests, plus $7,500.00 for income tax liability. Jo Ellen agreed, again, to reconvey the trust indenture against Lot 186 of Iron Horse, Phase 4, but "Jo Ellen will retain the promissory note . . . in the principal amount of $80,000.00 executed by Misty Reed Retz and the right to assert a creditor's claim as an unsecured creditor in Misty Reed Retz's bankruptcy case." Jo Ellen's Ex. 8, p. 5.

On September 19, 2006, Jo Ellen filed her Proof of Claim No. 6 in the instant case asserting an unsecured nonpriority claim in the amount of $91,497.50. Attached to Claim No. 6 is a copy of Jo Ellen's Ex. 2, the promissory note Misty signed to Robert in the amount of $80,000.00, and an assignment of that note to Jo Ellen. Samson testified that no dispute or question exists that Jo Ellen is Robert's successor under the note. He testified that he does not dispute Jo Ellen's right to file an unsecured claim, and that his understanding of the settlement agreement was that Joe Ellen was free to file a proof of claim, although both settlement agreements reserve the right to object to her claim.

A discharge was entered in Misty's case on December 4, 2006.[6]

---

[6]The U.S. Trustee commenced an adversary proceeding, No. 07-00084, on December 3, 2007, to revoke Misty's discharge. Trial in Adv. No. 07-84 is scheduled to commence on July 8, 2008.

6

Abbey/TCLLC filed their objection to Jo Ellen's Claim No. 6 on October 31, 2007, alleging that Robert loaned the $80,000.00 to Brendon, not to Misty, that Brendon used the loan to pay his obligations to persons other than Misty, and that there was a failure to consideration because no funds were loaned to or delivered to Misty.

## DISCUSSION

### I. Contentions of the Parties.

Abbey/TCLLC contend that "there is no consideration for the note given to Misty" for the $80,000 check because Robert loaned Brendon the money to help Brendon pay for Brendon's American Express problems as noted on the memo of the $80,000 check. Abbey/TCLLC argue that Misty's argument that bills were paid for their attorneys "is not consistent with the proven facts", and that Misty failed to explain the $50,000 cash deposited with the $80,000 check. Abbey/TCLLC contend that Misty was not personally liable for Brendon's business debts and there was no explanation how Robert's advance was related to the necessities of life, so she received no benefit or promise when she signed the promissory note. Abbey/TCLLC seek disallowance of Jo Ellen's claim.

Jo Ellen contends that Abbey has the burden of showing lack of consideration, and otherwise her claim is deemed *prima facie* evidence of the validity and amount under F.R.B.P. 3001(f). Jo Ellen contends that Misty testified she received benefit from the note from Robert by meals, attorney's fees, and support of her and Brendon's family. Jo Ellen argues that Abbey is estopped from objecting to her claim because she relinquished a lien on real estate in consideration of the settlement, and was otherwise released by Abbey and the Trustee and free to file her unsecured claim. She argues that Abbey's objection is contrary to the release. Next, Jo

7

Ellen contends Misty received adequate consideration in the form of payment of joint liabilities, meals, groceries and support while Brendon was Misty's sole means of support, and that the amount of the benefit is of no consequence because moral obligations and mutual promises are valid consideration. Additional consideration to Misty, Jo Ellen argues, resulted from the debt being converted from a demand debt to a term debt, and Robert's forbearance. Lastly, Jo Ellen argues that Abbey lacks standing to object to her claim.

**II. Standing.**

The Court first considers whether Abbey/TCLLC has standing to object to another creditor's claim. Longstanding law in this district holds that a general unsecured[7] creditor may have standing to object to another creditor's claim only if the objecting party applied to the trustee to object to the other creditor's claim, the trustee refused to object and the court authorizes the objecting creditor to proceed. *In re Parker Montana Co.*, 47 B.R. 419, 421 (D. Mont. 1985). Abbey/TCLLC has made no showing that he requested the Trustee Samson to object to Jo Ellen's claim, and that Samson refused their request, and this Court has not been requested to authorize and has not authorized Abbey/TCLLC to object to unsecured creditors' claims.

One exception to this rule is discussed in *In re Associated Vintage Group, Inc.*, 283 B.R. 549, 559 n.8 (9th Cir. BAP 2002) which states at footnote 9: "Unsecured creditors have standing to object to claims where a successful objection would increase the fund available for unsecured creditors." That rule does not apply in the instant case for three reasons. First, no showing exists

---

[7]The court noted that the prohibition against objections to claims of creditors by general creditors unless the trustee refuses to challenge them does not apply to secured creditors, because security interests are at stake for secured creditors. *Parker Montana*, 47 B.R. at 421-22.

in the record that a successful objection to Jo Ellen's claim would increase the funds available for unsecured creditors. The amount in the estate is unaffected. Second, *Associated Vintage Group* involved a chapter 11 case, not a chapter 7 case with an appointed trustee such as the instant case. Third, *Parker Montana* is a decision from the district court of this district. BAP cases are not binding on the district courts themselves. *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir. 1990). Accordingly, *Parker Montana* and not *Associated Vintage Group* is the binding precedent in this district, and its rule governs.

    *Parker Montana* remains among the majority of courts which have ruled that a chapter 7 trustee alone may filed objections to proofs of claim. *See In re Trusted Net Media Holdings, LLC*, 334 B.R. 470, 475-76 (Bankr. N.D. Ga. 2005) (citing cases including *Parker Montana*). The basis for that rule is the need of orderly and expeditious administration of the estate, and the trustee's status as the primary spokesman for all the creditors in the discharge of the trustee's duty. *Trusted Net Media Holdings,* 334 B.R. at 476 (citing cases and 4 COLLIER ON BANKRUPTCY § 402.01 (15th ed. rev. 2004)). Abbey/TCLLC have failed to show that they requested the Trustee to object to Jo Ellen's claim and that the Trustee refused. In addition Abbey/TCLLC failed to establish that the estate would benefit if his objection to Jo Ellen's claim were to be sustained. As a result, Abbey/TCLLC lack standing to object to Jo Ellen's claim.

    Furthermore, Abbey/TCLLC lack standing to object as a result of this Court's decision entered on March 19, 2008 (Docket Nos. 139/140) sustaining Misty's objection and disallowing Abbey/TCLLC's Proof of Claim No. 5. Section 502 of the Code provides that a claim is deemed allowed unless a "party in interest" objects. 11 U.S.C. § 502(a). With the disallowance of Abby/TCLLC's claim they are not creditors with a right to payment from Misty, and therefore do

9

not qualify as parties in interest authorized to file objections to claims under § 502(b).

The Court nevertheless will consider the merits of Abbey/TCLLC's objection to Jo Ellen's claim to establish a record.

### III. Allowance of Claims.

The law on objections and allowance of claims is well settled in the Ninth Circuit and this Court. This Court discussed the applicable law governing the burden of proof for allowance of claims in *In re Eiesland*, 19 Mont. B.R. 194, 208-09 (Bankr. D.Mont. 2001):

> A validly filed proof of claim constitutes *prima facie* evidence of the claim's validity and amount. F.R.B.P. 3001(f). The Ninth Circuit recently explained the general procedure for allocating burdens of proof and persuasion in determining whether a filed claim is allowable in *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000):
>
>> A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes "*prima facie* evidence of the validity and amount of the claim" pursuant to Bankruptcy Rule 3001(f). See also Fed. R. Bankr.P. 3007. The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. See Adv. Comm. Notes to Fed. R. Bankr.P. 9014.
>
>> Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *Wright v. Holm (In re Holm )*, 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 L. King, Collier on Bankruptcy § 502.02, at 502-22 (15th ed.1991)); *see also Ashford v. Consolidated Pioneer Mort. (In re Consol. Pioneer Mort.)*, 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd*, 91 F.3d 151, 1996 WL 393533 (9th Cir.1996). To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *In re Holm*, 931 F.2d at 623.

\* \* \* \*

> "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *In re Consol. Pioneer*, 178 B.R. at 226 (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir.1992)). The ultimate burden of persuasion remains at all times upon the claimant. *See In re Holm*, 931 F.2d at 623.
>
> *See also Knize*, 210 B.R. at 778; *Matter of Missionary Baptist Foundation of America*, 818 F.2d 1135, 1143 (5th Cir.1987); *In re Stoecker*, 143 B.R. 879, 883 (N.D.Ill.1992), *aff'd in part, vacated in part*, 5 F.3d 1022 (7th Cir.), *reh'g denied* (1993).
>
> Thus, the Bank's Proof of Claim No. 2 is *prima facie* evidence of the validity and amount of its claim under Rule 3001(f), and the Debtor has the burden of showing sufficient evidence and to "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Lundell*, 223 F.3d at 1039 (quoting *Holm*). This Court finds that Eric, as the objecting party, has not produced sufficient evidence to cause the burden to revert to the Bank to prove the validity and amount of its claim. *Lundell*, 223 F.3d at 1039 (quoting *In re Consol. Pioneer*, 178 B.R. at 226).

The analysis under *Lundell v. Anchor Const. Specialists* was reiterated by the Ninth Circuit in *In re Los Gatos Lodge, Inc.*, 278 F.3d 890, 894 (9th Cir. 2002).

Applying this analysis to the instant case, Abbey/TCLLC has the initial burden to overcome the *prima facie* effect of the validity and amount of Jo Ellen's Claim No. 6 under Rule 3001(f). Jo Ellen's Proof of Claim No. 6 includes the promissory note signed by Misty. A written instrument is presumptive evidence of sufficient consideration and the burden of attacking the sufficiency of such consideration is on the party seeking to invalidate the instrument. MONT. CODE ANN. ("MCA") §§ 28-2-804, 28-2-805; *Rich v. Ellingson*, 2007 MT 346, ¶ 20, 340 Mont. 285, ¶ 20, 174 P.3d 491, 496, ¶ 20. This presumption is added to TCLLC's burden to show facts tending to defeat the claim by probative force equal to that of the allegations of the proof of claim itself. *Lundell*, 223 F.3d at 1039.

11

In its attempt to meet its two burdens Abbey/TCLLC called Misty to testify as an adverse witness. Misty corroborated Jo Ellen's claim by testifying that she feels obligated to Robert and Jo Ellen for the funds evidenced in the note, Jo Ellen's Ex. 2, and that the funds went to pay her and Brendon's attorneys' fees, household expenses, and meals including their anniversary dinner. Abbey/TCLLC argue that the funds all went to pay Brendon's American Express debts, but their own evidence in the form of Misty's testimony contradicts that argument.

At the time Robert loaned them the $80,000 and Misty signed the note both she and Brendon had no income. She was pregnant and not working, and Brendon was in litigation against Abbey. Any misconduct by Brendon with respect to his American Express transactions has not been shown attributable to Misty because all the evidence in the record shows that Misty and Brendon kept separate finances, she did not see his American Express bills or other bills, and she was not an active participant in his business transactions.

In short, Abbey/TCLLC failed to satisfy their burden of proof under MCA §§ 28-2-804 and 28-2-805 of attacking the presumption of sufficient consideration arising from the written promissory note.

For the above reasons the Court concludes that Abbey/TCLLC lack standing to object, and further concludes that Abbey/TCLLC failed to satisfy their burden to show facts tending to defeat Jo Ellen's claim by probative force equal to that of the allegations of Proof of Claim No. 6 itself. *Lundell*, 223 F.3d at 1039. Accordingly, Abbey/TCLLC's objection to Jo Ellen's Claim No. 6 will be overruled.

**IT IS ORDERED** a separate Order will be entered in conformity with the above overruling Abbey/TCLLC's objection (Docket No. 106) to Proof of Claim No. 6 filed by Jo

Ellen Retz.

                                            BY THE COURT

                                            */s/ Ralph B. Kirscher*
                                            HON. RALPH B. KIRSCHER
                                            U.S. Bankruptcy Judge
                                            United States Bankruptcy Court
                                            District of Montana